IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL EUGENE RILEY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-2087 |
| | § | |
| NATHANIEL QUARTERMAN, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS  DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER GRANTING
## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 25) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1).  Also pending is Petitioner's "Motion for Financial Assistance to Obtain DNA Expert Assistance and Other Scientific Test Services" (Document No. 39), Petitioner's "Motion for Rule 11 Sanctions" (Document No. 40), and Petitioner's "Motion for an Evidentiary Hearing for Full and Fair Hearing on Factual Development on the Question of the Reasonableness of the State Court Determinations under 28 USC 2254(d)(1) and (d)(2) and for an Opportunity to Rebut the Presumption of Correctness of the State Court's Factual Determinations with Clear and Convincing Evidence" (Document No. 47).  Having considered Respondent's Motion for Summary Judgment, Petitioner's Response in opposition (Document No. 45), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the state court records, the summary judgment evidence, Petitioner's motions, and the applicable law, the Court ORDERS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 25) is

GRANTED, Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, Petitioner's Motions (Document Nos. 39, 40 & 47) are all DENIED, and this case is DISMISSED WITH PREJUDICE.


I.      **Introduction and Procedural History**

Michael Eugene Riley ("Riley") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a 2000 capital murder conviction in the 209th District Court of Harris County, Texas, Cause No. 765453.  Riley was charged by indictment with that offense on January 27, 1998.  His first trial ended in a mistrial after the jury was unable to reach a unanimous verdict.  On March 14, 2000, following a second trial, Riley was found guilty, and was sentenced by the jury to life imprisonment.  His conviction was affirmed on appeal on March 28, 2002.  *Riley v. State*, No. 01-00-00462-CR.  Riley's petition for discretionary review was refused on August 21, 2002.

Riley then, on September 16, 2003, filed a state application for writ of habeas corpus.  He also filed a post-conviction motion for DNA testing, which was denied by the state trial court on November 3, 2004, with that denial being affirmed by the Texas' First Court of Appeals on February 16, 2006.  Thereafter, on March 14, 2007, the Texas Court of Criminal Appeals denied Riley's state application for writ of habeas corpus without written order on the findings of the trial court without a hearing.  *Ex parte Riley*, Application No. WR 56,592-02, at cover.  This § 2254 proceeding, filed by Riley on or about June 22, 2007, followed.  Respondent has filed a Motion for Summary Judgment (Document No. 25), to which Riley has filed a Response in opposition (Document No. 45).  Riley has also filed a Motion for Financial Assistance, a Motion for Sanctions, and a Motion for an

Evidentiary Hearing (Document Nos. 39, 40 &47).  This § 2254 proceeding is ripe for ruling.[1]

## II.   **Factual Background**

The factual background, as set forth by the Texas Court of Appeals in its written opinion

affirming Riley's conviction, is as follows:

> The complainant, Weira Ruth Holmes, who suffered from emphysema, lived in a trailer park. Rita Freeman, a friend, moved into the complainant's home in 1996. Shortly thereafter, the complainant had to stay in the hospital for some time.  When she returned, she discovered that [Riley] had moved into her home with Freeman. Because the complainant was unhappy with the living arrangements, she forced [Riley] and Freeman to leave her home.

> Freeman then moved in with her ex-mother-in-law, who lived in the same trailer park as the complainant.  Near the end of 1997, [Riley] started living with Freeman again.

> On October 5, 1997, around 9:45 p.m., Sandra Duke, who lived in the same trailer park as the complainant, took her dog for a walk.  She noticed that a car, identified in a photograph marked as exhibit 91, was parked in the driveway of the complainant's home.

> On the same evening, Linda Martin, another resident of the trailer park, also saw a car, identified in the photograph marked as exhibit 91, parked in front of the complainant's home.  She saw two people, one male, and one female, walk out of the complainant's home around 10:00 p.m.  She did not see that they were carrying anything at that time.  The male was wearing a baseball cap, and the female had shoulder-length hair.  The male got into the driver's side, and the female entered the passenger's side.  She then saw the vehicle drive away, but it did not exit the trailer park.

> The next day, on October 6, 1997, friends of the complainant attempted to visit her.  After repeated attempts to get the complainant to answer the door, the police were called.  Upon entering the home, the police found the complainant, who had died from fatal wounds caused by a knife.  An expert testified that she died approximately between 4:00 a.m. and 10:00 a.m. on October 6.

---

[1] In an Order entered on August 25, 2008, Petitioner was given until September 8, 2008, to file any supplemental briefing on Respondent's Motion for Summary Judgment.  *See* Document No. 57.

Freeman testified that she and [Riley] shared an apartment. She identified the car pictured in exhibit 91 as the car that she and [Riley] drove. On October 6, 1997, Freeman woke up around 3:30 a.m. and noticed that [Riley] was not in the apartment. She then went back to sleep and woke up again at 6:00 a.m. She saw [Riley] enter the apartment between 6:30 and 7:00 a.m., carrying a VCR. When Freeman attempted to leave the apartment for work, [Riley] said that he had to empty the car before she could leave. The both went downstairs, and [Riley] retrieved a TV from the car. Freeman testified that the two items did not belong to her.

In addition, Freeman testified that, before the police arrested [Riley], she spoke to him on the phone. [Riley] told her that he was at the complainant's house, but that a black man went in the house while he stayed in the car. The black man came outside with the TV and VCR and was in a hurry to leave.

Sergeant Zink, who investigated the complainant's death, testified that he recovered the complainant's TV and VCR inside Freeman's apartment. Officer Bell identified [Riley's] bloody handprint on the TV. Katherine Kohl, a DNA analyst, testified that the blood on the TV contained blood that belonged to more than one person. She determined that the blood samples from the TV were consistent with both the complainant's and [Riley's] DNA. The police were also able to take blood from a baseball cap that was found in Freeman's apartment. Kohl testified that the cap contained DNA from more than one person, and that both the complainant and [Riley's] DNA were consistent with the DNA on the baseball cap. Kohl further testified that an envelope in Freeman's apartment also contained the complainant's DNA. When Sergeant Zink and other officers approached [Riley] to arrest him, they asked if his name was Michael Riley. [Riley] answered that his name was David Henry.

*Riley v. State*, No. 01-00-00462-CR at 2-4.

III.   <u>Claims</u>

Riley raises four claims in his § 2254 application:

1.    that the State suppressed, excluded and/or lost evidence that was favorable to the defense;

2.    that the police mishandled and contaminated evidence found at the scene;

3.    that his trial counsel, Jerry Guerinot, was ineffective for: (a) failing to file a motion for new trial; (b) failing to conduct an adequate pretrial investigation; (c) failing to seek evidence from the State about a third blood drop found at

4

the scene; (d) refusing to call John and Shirley McCormick as witnesses at the second trial; (e) refusing to allow him (Riley) to testify at the second trial; and (f) failing to object to "tainted, illegal and non-existent" evidence at trial; and

4.      that he is actually innocent of the offense.

Respondent argues in the Motion for Summary Judgment that no relief is available on those claims under § 2254(d) because the Texas Court of Criminal Appeals' adjudication of the claims was not contrary to or an unreasonable application of clearly established Federal law as established by the Supreme Court of the United States nor was it based on unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**IV.      Standard of Review**

        Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the

5

relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus

6

proceeding.  Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable.").  Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative.  In addition, the correctness of the state court's decision is not determinative.  As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted).  Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning.  *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

## V.   Discussion

### A.   Suppression/Exclusion of Evidence Claim

In his first claim, Riley maintains that the State suppressed evidence that an unidentified third person's blood was found at the scene.  In addition, Riley maintains the State suppressed evidence that a blood drop found on the back of the television taken from the complainant's house was not

7

photographed prior to being swabbed and tested.

The Texas Court of Criminal Appeals rejected Riley's suppression of evidence claim on the merits when it determined, based on the findings of the state trial court, that Riley had failed "to show that the State suppressed or withheld evidence as a result of the police officer's failure to photograph a blood drop that was swabbed for DNA testing" and that the "State's failure to disclose information concerning a photograph of the blood drop was not material and would not have created any reasonable doubt as to [Riley's] guilt." *Ex parte Riley*, Application No. WR 56,592-02 at 126. This rejection of Riley's suppression/exclusion of evidence claim is not contrary to or an unreasonable application of clearly established Federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  In order to prevail on a suppression of evidence claim, however, it must be shown that evidence was actually suppressed by the prosecution and that the suppressed evidence was material.  *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999) ("There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.").  Evidence of which the defendant is aware does not constitute suppressed evidence within the meaning of *Brady*.  *See generally United States v. Ramirez*, 810 F.2d 1338, 1343 (5th Cir.), *cert. denied*, 484 U.S. 844 (1987); *United States v. Fogg*, 652 F.2d 551, 559 (5th Cir. 1981), *cert. denied*, 456 U.S. 905 (1982).

Evidence is material under *Brady* if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Here, Riley repeatedly points to one part of the record to support his suppression of evidence claim: "RR 21:22". *See* Response to Motion for Summary Judgment (Document No, 45) at 13.  That record reference, however, does not support Riley's claim that favorable evidence from the scene was suppressed.  Officer Bell, the lead investigating officer, testified in volume 21 of the record, about projected blood spatter, castoff spatter, and suspect blood – suspect blood being blood at the scene found outside the projected blood pattern from the victim.  At page 22 of volume 21, Officer Bell testified about one such suspect blood stain:

> Q:    What was significant to you, Detective Bell, about the stain that's shown in there in State's Exhibit 202?
>
> A:    That stain there did not fit the pattern of the projected blood that I talked about earlier.  In other words, the projected blood came out from the source of blood and that blood was behind that source of blood.  So, that had to get there some other way.
>
> Q:    Was it also significant that it had fallen straight down?
>
> A:    Yes.
>
> Q:    Why is that?
>
> A:    The – if it fell straight down, then it could not have come from the victim because the victim was on the floor and the – never left that area of the house because there is no blood trails that lead to that.  So, somehow, some other way that blood drop had to have come from some place else.

S.F. Vol. 21, at 22.  Officer Bell then testified that he collected five stains of suspect blood from the scene, and one stain of suspect blood from the television stand. *Id.* at 25-28.  Nowhere in Officer Bell's testimony is there any mention or reference to blood having been found at the scene that

belonged to neither the victim nor Riley.  Indeed, *nowhere* in the record is there any evidence that

blood was found at the scene that did not belong to either the victim or Riley.  Riley's claim in this

regard is wholly unsupported by the record.

As for Riley's complaints about the State's failure to photograph a blood drop found on the

television, Officer Bell admitted at trial that no such photograph was taken, but that the blood drop

itself was preserved and tested:

> Q [by defense]: Okay.  Would you show me on the television where this little round
> spot on the back of it was, and show the ladies and gentlemen of the jury?
>
> A:      It was in this area here.
>
> Q:      Where in that area?
>
> A:      I'm not sure which one of these rails, but one of these rails here.
>
> Q:      Okay.  You have described it as a small circular drop of blood; have you not?
>
> A:      Yes, I have.
>
> Q:      So, that would indicate that it was a drop falling at 90 degrees to a flat
> surface, right?
>
> A:      I said circular.  Oval, circular.  It was a drop that had fallen.  It wasn't a
> contact is what I meant.
>
> Q:      Okay.  Show us a picture of it so we can see what you're talking about
> because you've always described it as circular up until right now.
>
> A:      I don't have a photograph of that.
>
> Q:      You didn't take a photograph of it?
>
> A:      No, I didn't.
>
> * * *
>
> Q:      Was there some particular reason you did not take a picture of that particular
> blood?

10

A:      I was excited about the prints that I had found and I had tunnel vision and that's what I was focusing on.

Q:      Well, we can see other blood.  Can we see this blood?  Can we see where it was at all?

A:      No, I didn't process that area with the amino black.  I just collected the stain before I processed it.

Q:      Are you now saying it was not a circular drop of blood?

A:      I am saying round in shape.  I don't know if it was a perfect circle.  I don't know the angle of impact from the shape of the blood stain.

S.F.  Vol. 21 at 73-74.  Given that Officer Bell admitted that a photograph of the blood drop on the television had not been taken, the State cannot be said to have "suppressed" that fact.  Moreover, as found by the Texas Court of Criminal Appeals, the absence of such a photograph was not material – that is, there is no reasonable probability that the result of the proceeding would have been different if such a photograph had been taken.  *Ex parte Riley*, Application No. WR 56,592-02 at 126. Accordingly, the Texas Court of Criminal Appeals' rejection of this claim is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented. Under § 2254(d), no relief is available on this claim.

**B.      Evidence handling claims**

In his next claim, Riley complains about the State's investigation of the crime and its collection and handling of the evidence.  According to Riley,

> Pasadena police did not handle DNA evidence properly[,] resulting in contamination of evidence, loss of material blood-spatter evidence, blood-drop photographs, and failed to test other murder scene evidence pointing to Rita Freeman as the actual killer, and other evidence that exonerated Applicant. The State has adamantly refused to test existing DNA and other evidence establishing Applicant's innocence.

§ 2254 Application (Document No. 1) at 7.

Defendants do not enjoy a general constitutional right to a proper or thorough investigation of the offense with which they are charged.  Rather, for a due process violation to arise, the police investigation must have been so inadequate that it: (1)  was "tantamount to a suppression of relevant evidence", *Owens v. Foltz*, 797 F.2d 294, 296 (6th Cir. 1986), or (2) resulted in an identification procedure that was "'so unnecessarily suggestive and conducive to irreparable mistaken identification'" of the defendant as the perpetrator.  *Foster v. California,* 394 U.S. 440, 442 (1969) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).   When the inadequacy of the police investigation is premised on "nothing more than negligence on the part of the police investigators" and there is no indication of "any bad faith on [the part of investigators] in failing to preserve [ ] evidence," a federal due process claim has not been stated.  *Holdren v. Legursky*, 16 F.3d 57, 60 (4th Cir.), *cert. denied*, 513 U.S. 831 (1994).

Here, Riley's complaints about the police investigation, and their handling of evidence do not rise to the level of a due process violation.  Riley has not alleged, much less made a showing, that the police investigation was conducted in bad faith, that any evidence was intentionally mishandled,  or that any favorable evidence was not preserved.  In addition, Riley's allegation that there was some blood drop evidence that would have exonerated him has no support whatsoever in the record.  Riley has therefore not stated a claim for a violation of his due process rights, and no relief is available on this claim.

### C.    Ineffective Assistance of Counsel Claims

In his third claim, Riley contends that his trial counsel, Jerry Guerinot, was ineffective for: (a) failing to file a motion for new trial; (b) failing to conduct an adequate pretrial investigation; (c)

failing to seek evidence from the State about a third blood drop found at the scene; (d) refusing to

call John and Shirley McCormick as witnesses at the second trial; (e) refusing to allow him (Riley)

to testify at the second trial; and (f) failing to object to "tainted, illegal and non-existent" evidence

at trial.

Guerinot addressed Riley's ineffectiveness claims in an affidavit he filed in Riley's state habeas

proceeding.  In that affidavit, Guerinot stated:

> I was appointed, along with Attorney Mack Arnold, by the 209th District Court of Harris County, Texas, to represent Michael Eugene Riley for the offense of capital murder in cause number 765453-B.  Mr. Riley originally had other appointed attorneys to represent him, but Mr. Arnold and I were later appointed after the State made the decision to seek a death sentence against Mr. Riley.
>
> Mr. Riley first claims that a motion for new trial was not filed on his behalf. However, immediately after the jury returned the life sentence for Mr. Riley, who manifested a desire to appeal, the trial court appointed Ken McLean to represent Mr. Riley on direct appeal.  I had nothing else to do with Mr. Riley's case at that point. I do not have any knowledge whether Mr. McLean filed a motion for new trial on Mr. Riley's behalf.
>
> Mr. Riley also alleges that I did not conduct any investigation and that the evidence from the HPD Crime Laboratory was suppressed.  However, both Mr. Arnold and I conducted investigation into the facts and possible defenses.  There was DNA evidence and testing conducted in this case.  However, the HPD Crime Laboratory did not conduct any of the testing.  If I recall correctly, the Harris County Medical Examiner's Office conducted the DNA testing related to the prosecution of Mr. Riley.
>
> Mr. Riley also claims that I refused to present the testimony of John and Shirley McCormick.  Mr. Riley is correct in this statement.  In Mr. Riley's first trial, which ended in a mistrial, I did present the testimony of John and Shirley McCormick. However, in the second trial, both Mr. Arnold and I made the strategic decision not to present the testimony of either John or Shirley McCormick.  From the first trial, I was aware that the prosecutors were ready to present a demonstration involving blood transfer that we did not want the jury to hear or consider.  As a result, Mr. Arnold and I made the decision to not present any defense evidence in order to keep the State from presenting the blood transfer demonstration.  During the defense case-in-chief, we only chose to recall Rita Freeman for cross-examination.  Since the defense did not present any evidence, then the trial judge did not allow the

prosecutors to present the blood transfer demonstration in rebuttal because there was no evidence to rebut. The decision not to call John and Shirley McCormick in the second trial was purely strategic.

Mr. Riley also claims that I refused to allow him to testify. During the first trial, Mr. Riley testified very poorly. In light of Mr. Riley's prior testimony, we discussed his desire to testify in the second trial. Initially, Mr. Riley did indicate a desire to testify in the second trial. However, we informed Mr. Riley that, although it was his right to testify, we believed that it would be in his best interest to not testify since he had come across so poorly in the first trial. We told Mr. Riley that we thought he would have a better chance of gaining an acquittal or of avoiding the death sentence if he did not testify. After this discussion, Mr. Riley agreed and decided not to testify in trial.

Finally, Mr. Riley claims that I failed to object to tainted, illegal, non-existent evidence in the form of a blood drop found on the victim's television[ ] which contained DNA from the complainant and Mr. Riley. Mr. Riley believes that I should have objected to the collecting officer's failure to photograph the blood drop prior to collecting it for subsequent DNA testing. I presently do not recall whether the blood found on the television was photographed. However, there is no legal objection that I could make concerning an officer's failure to photograph the blood evidence prior to collecting it. While this might go to the weight that the jury considers this evidence, I believe that this evidence was admissible.

Additionally, Mr. Riley believes that I should have objected to the Pasadena Police Department's delivery of the biological evidence for DNA testing to the HPD Crime Laboratory in an unrefrigerated, brown paper sack. As stated earlier, HPD Crime Laboratory was not involved in this case and did not conduct any DNA testing related to this case. Nevertheless, I do not believe that I would have objected to this chain of custody situation. Again, while I could have challenged the weight that the jury should give the DNA evidence based upon its transport in a unrefrigerated, brown paper sack, I do not believe that the admissibility could be challenged.

*Ex Parte Riley*, Application No. WR 56,592-02 at 96-98.   Finding the contents of Guerinot's affidavit to be true, the Texas Court of Criminal Appeals rejected Riley's ineffectiveness claims as follows:

5.   The Harris County Medical Examiner's Office, not the Houston Police Department Crime Laboratory, conducted the DNA testing on the biological evidence;

6.      [Riley] fails to show that the DNA evidence presented against him was unreliable;

7.      [Riley] personally made the decision not to testify;

8.      [Riley] fails to present any newly-discovered evidence which would establish by clear and convincing evidence that a jury would have acquitted [Riley] of capital murder in light of the newly-discovered evidence. *Ex parte Elizondo*, 947 S.W.2d 202, 206 (Tex. Crim. App. 1996);

9.      The totality of the representation afforded [Riley] was sufficient to protect his right to reasonably effective assistance of counsel[.]

*Ex Parte Riley*, Application No. WR 56,592-02 at 126-127. That rejection of Riley's ineffectiveness claims is not contrary to or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Under *Strickland*, 466 U.S. at 687, in order to be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct

was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir.
1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993).  In order to overcome the presumption
of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to
have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Under the
prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient
performance the result of his trial would have been different, "and that counsel's errors were so
serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378.
"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment
of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel.  The
determination whether counsel has rendered reasonably effective assistance turns on the totality of
facts in the entire record.  Each case is judged in light of the number, nature, and seriousness of the
charges against a defendant, the strength of the case against him, and the strength and complexity of
his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S.
1220 (1984).   The reasonableness of the challenged conduct is determined by viewing the
circumstances at the time of that conduct.  *Strickland*, 466 U.S. at 690-691.  Counsel will not be
judged ineffective only by hindsight.  "The Sixth Amendment guarantees reasonable competence, not
perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003);
*Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("hindsight is discounted").

Each of Riley's allegations of ineffectiveness, other than his allegation that his counsel refused
to allow him to testify, fail under *Strickland's* deficiency and prejudice prongs.  Riley has made no
showing that a motion for new trial would have been successful, no showing that any different or

additional pretrial investigation would have led to a different result, no showing that any additional blood drop evidence was available and favorable to the defense, no showing that the result of the trial would have been different if Shirley and John McCormick had been called as witnesses, and no showing that any evidentiary objection would have been successful and would have led to a different result.   The Texas Court of Criminal Appeals' rejection of these ineffectiveness allegations is therefore not contrary to or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the evidence.

As for Riley's claim that counsel refused to allow him to testify in the second trial, the Texas Court of Criminal Appeals made a factual determination that Riley himself made the decision not to testify.   That factual determination is not unreasonable given the contents of counsel's affidavit, Riley's silence on the matter of testifying at the time of the trial, and counsel's concerted efforts to keep Riley's testimony from the first trial from being admitted as evidence during the second trial. Because the factual finding made by the Texas Court of Criminal Appeals on Riley's claim that counsel refused to allow him to testify is not unreasonable given the evidence presented in the state court proceeding, this ineffectiveness claim fails as well under § 2254(d).

### D.   Actual Innocence Claim

In his final claim, Riley maintains that he is actually innocent of the murder of Weira Holmes, and that it was Rita Freeman, not him, who committed the murder.

"Supreme Court jurisprudence does not support an independent claim for federal habeas relief based on an allegation of actual innocence." *Dowthitt v. Johnson*, 180 F.Supp.2d 832, 843 (S.D. Tex. 2000) (Atlas, J.).   A claim of actual innocence may, however, be a "'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"

17

*Schlup v. Delo*, 512 U.S. 298, 316 (1995) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). To serve as such a "gateway", however, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," and must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 324, 327.

Here, given the rejection of Riley's suppression of evidence and ineffective assistance of counsel claims, as well as the State courts' conclusion that there was sufficient evidence to support Riley's conviction, Riley has not stated a viable claim of actual innocence under either *Herrera* or *Schlup*.

## VI.   Request for Financial Assistance, Motion for Sanctions and Request for Evidentiary Hearing

In three separately filed motions, Riley asks for financial assistance so that he can obtain scientific and DNA evidence favorable to his case, asks that counsel for Respondent be sanctioned for supporting Respondent's Motion for Summary Judgment with untrue statements, and asks for an evidentiary hearing so that he can demonstrate that the Texas Court of Criminal Appeals' rejection of his claims was unreasonable within the meaning of § 2254(d).

### A.   Financial assistance/discovery

With his motion for financial assistance Riley seeks, in essence, permission to conduct discovery and the financial means to do so.  Discovery in a § 2254 proceeding is governed by Rule 6 of the Rules governing § 2254 proceedings, which provides:

(a) Leave of Court Required.  A judge may, for good cause, authorize a party to

18

conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C.   § 3006A.

"Good cause" within the meaning of Rule 6 "is shown where 'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief.'" *Reed v. Quarterman*, 504 F3d 465, 471-72 (5th Cir. 2007) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Here, there is no good cause for allowing Riley to retain a DNA expert to assist him in this case. The record shows that Riley filed, in state court, a Motion for Forensic DNA Testing. In connection with that motion, Riley was appointed counsel and a hearing was held. Upon the conclusion of the hearing, the state trial court denied Riley's motion. That denial was affirmed on appeal by the Texas Court of Appeals after Riley's appointed counsel filed an *Anders* brief, to which Riley filed nothing in response. *Riley v. State*, No. 01-04-01150-CR. Given that Riley was appointed counsel and was given an opportunity in the state courts to develop his claim relative to the DNA evidence, Riley is neither entitled to discovery on that issue herein, nor funds to initiate such discovery. Therefore, Riley's Motion for Financial Assistance (Document No. 39) is DENIED.

### B.    Motion for Sanctions

In his Motion for Sanctions, Riley seeks Rule 11 sanctions against counsel for Respondent for citing, and relying on portions of attorney Guerinot's affidavit that are not true. In particular, Riley complains that Guerinot's statement in his affidavit that he did not call Shirley and John McCormick as witnesses in the second trial because of his desire to prevent the State from conducting a blood transfer demonstration is an untrue statement given the fact that the State did offer a blood transfer demonstration during the second trial. Riley also maintains that Guerinot's statement in his

19

affidavit that during the defense case-in-chief counsel only recalled Rita Freeman is also an untrue statement given the record evidence that shows that two other witnesses, Tina Riley and Steve Wells, were called as witnesses for the defense.

A review of Guerinot's affidavit and the trial record shows that any minor inaccuracies in Guerinot's affidavit did not affect the state courts' review and determination of Riley's ineffectiveness claims. The State court concluded that "[t]he totality of the representation afforded [Riley] was sufficient to protect his right to reasonably effective assistance of counsel." *Ex parte Riley*, Application No. WR 56,592-02, at 127. Counsel for Respondent was entitled to rely on and argue in favor of that finding, and was not required to scrutinize or parse through the contents of counsel's affidavit. Petitioner's Motion for Sanctions (Document No. 40) is DENIED.

### C.    Evidentiary hearing

In his motion for an evidentiary hearing, Riley asserts that he is entitled to an evidentiary hearing in this § 2254 proceeding because he was not afforded a hearing in the state habeas proceeding despite his requests for such. In addition Riley maintains that an evidentiary hearing is needed so that he can rebut the factual finding made by the Texas courts that the contents of Guerinot's affidavit were true.

Under 28 U.S.C. § 2254(e)(2), the Court's ability to hold an evidentiary hearing is limited as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> (A) the claim relies on–
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable; or

> (ii) a factual predicate that could not have been previously discovered
> through the exercise of due diligence; and

(B)  the facts underlying the claim would be sufficient to establish by clear and
convincing evidence that but for constitutional error, no reasonable factfinder would
have found the applicant guilty of the underlying offense.

Under § 2254(e)(2), a habeas applicant "fails" to develop the factual basis of a claim in state court

when he lacks diligence in his efforts to investigate and pursue his claims. *Williams v. Taylor*, 529

U.S. 420, 435-36 (2000).   According to the Supreme Court in *Williams*:

> The question is not whether the facts could have been discovered but instead whether
> the prisoner was diligent in his efforts.  The purpose of the fault component of
> "failed" is to ensure the prisoner undertakes his own diligent search for evidence.
> Diligence for purposes of the opening clause depends upon whether the prisoner made
> a reasonable attempt, in light of the information available at the time, to investigate
> and pursue claims in state court; it does not depend, as the Commonwealth would
> have it, upon whether those efforts could have been successful.  Though lack of
> diligence will not bar an evidentiary hearing if efforts to discover the facts would have
> been in vain, *see* § 2254(e)(2)(A)(ii), and there is a convincing claim of innocence, *see*
> § 2254(e)(2)(B), only a prisoner who has neglected his rights in state court need
> satisfy these conditions.

*Id.* at 435.  At a minimum, diligence requires that a prisoner "seek an evidentiary hearing in state

court in the manner prescribed by state law."  *Id.* at 437.

Riley maintains that he made a request for an evidentiary hearing in the state habeas

proceeding.  Having reviewed the record of the § 2254 proceeding, the undersigned concludes that

if such a request was made, it was not made separately or conspicuously, and can only be found in

the 69 page memorandum of law Riley submitted in the state habeas proceeding.  Nonetheless, Riley

was afforded a hearing on his Motion for Forensic DNA testing.  At that hearing, at which Riley was

assisted by counsel, it became clear that Riley had no evidence and no viable argument that the

available DNA evidence could be tested with newer DNA techniques that would yield more accurate

results.  *See* Transcript of Hearing, November 3, 2004.  Riley's appointed counsel admitted as much

in the *Anders* brief she filed on appeal:

> The ultimate issue in determining whether the court should order testing is whether the evidence establishes by a preponderance of the evidence that the movant would not have been convicted if exculpatory results had been obtained through DNA testing.  Art. 64.03, TEX. CODE CRIM. PRO.  In the instant case, it is not even necessary  to reach that issue because the statutory preconditions were not met. Counsel conceded that no evidence had been presented to satisfy the "new techniques" grounds for retesting of evidence; the record likewise does not support any finding of meaningful untested evidence.

Appointed Counsel's *Anders* Brief, No. 01-04-01150-CR at 6.  Despite being given notice of the

filing of the *Anders* brief, Riley did not file any response thereto.  Such failure, particularly where

Riley seeks to pursue the same DNA issues herein, evidences a lack of diligence.

Moreover, even if Riley had exercised diligence in the state court proceedings, an evidentiary

hearing would still not be warranted in this § 2254 proceeding.  There are no disputed factual issues

relative to any of Riley's claims that, if resolved in Riley's favor, would warrant him any relief in this

§ 2254 proceeding.  *See  Murphy v. Johnson*, 205 F.3d 809, 813-817 (5th Cir.) (where an evidentiary

hearing is not precluded by § 2254(e)(2), "a petitioner is entitled to an evidentiary hearing only where

a factual dispute, if resolved in his favor, would entitle him to relief, and not where a petitioner's

allegations are merely conclusory allegations unsupported by specifics."), *cert. denied*, 531 U.S. 957

(2000).  Riley has offered no evidence that any favorable evidence was suppressed, no evidence that

the police investigation was handled in bad faith, and no evidence that the result of his trial would

have been different if counsel had acted differently in any respect. [2] Accordingly, Riley's Request for

---

[2] Regardless of whether the contents of Guerinot's affidavit can be challenged as not completely accurate, the fact remains, as set forth above, that there is no evidence, and no reasonable probability, that the result of Riley's trial would have been different if counsel had acted differently in any respect.  Thus, regardless of whether Riley can dispute the accuracy of certain statements in Guerinot's affidavit, such disputes do not, by themselves, support Riley's claim that Guerinot was

an Evidentiary Hearing (Document No. 47) is DENIED.

## VII.    Conclusion and Order

Based on the foregoing and the conclusion that Riley is entitled to no relief in this proceeding under § 2254(d), the Court

ORDERS that Respondent's Motion for Summary Judgment (Document No. 25) is GRANTED, Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED WITH PREJUDICE on the merits.  It is further

ORDERED that Petitioner's "Motion for Financial Assistance to Obtain DNA Expert Assistance and Other Scientific Test Services" (Document No. 39), Petitioner's Motion for Sanctions (Document No. 40),  and Petitioner's "Motion for an Evidentiary Hearing for Full and Fair Hearing on Factual Development on the Question of the Reasonableness of the State Court Determinations under 28 USC 2254(d)(1) and (d)(2) and for an Opportunity to Rebut the Presumption of Correctness of the State Court's Factual Determinations with Clear and Convincing Evidence" (Document No. 47) are also DENIED.   It is further

ORDERED that a Certificate of Appealability is DENIED.  A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement

_____

ineffective within the meaning of *Strickland*.

23

to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001). When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Given the claims raised herein as well as the rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the assessment of Petitioner's constitutional claims to be debatable or wrong. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 24th day of September, 2008.

Frances H. Stacy
United States Magistrate Judge

24